Okay, the next argued case is number 19, 1208 Thunder Power New Energy Vehicle Development Company v. Byton North America Corp. Mr. Reed. Thank you, Your Honor. Good morning, and may it please the Court. In 2015, Thunder Power debuted a new electric car at the Frankfurt Auto Show with capabilities no one had seen before. Thunder Power also obtained patents on this vehicle, and last year sought to protect its innovations by enforcing three of those patents against a car from Byton. But instead of protection, Thunder Power received a dismissal telling Thunder Power that it did not invent new and useful improvements to a machine, but instead its new vehicle capabilities were merely abstract ideas and eligible for protection. This was, in effect, the fulfillment of the Supreme Court's prediction that if courts do not tread carefully in this area, it will swallow all of patent law. We asked the Court to reverse, and we asked the Court to do so for three reasons. First, the District Court erred in dismissing the case on the 12B6 motion because the amended complaint plausibly alleges that the claims contain inventive concepts. Starting with the 373 patent, Claim 1 discloses an amended complaint alleges the inventive concept of a system of position cameras and a custom processor configured to control execution devices through gestures. And that's at Appendix 176, Paragraph 26 of the amended complaint. Now, the amended complaint alleges that this inventive concept improves vehicle technology in three ways. First, by helping to reduce driver distraction. That's in Paragraph 21 of the amended complaint. Also, by permitting access to operating signals normally disabled during operation of the vehicle. That's in Paragraph 22 of the amended complaint. And finally, by providing capabilities beyond prior art passive consumption displays. That's in Paragraph 26. Assume for me, here's a kind of distinction that I'm trying to test. Assume for me, with me for a minute, that an assertion about an improved property, safety, handleability or something, doesn't itself count. What you need on this assumption, this is the distinction I'm trying to explore, is an assertion about a new physical arrangement or physical set of steps. It seems to me that maybe everything said in the declaration and the amended complaint is all about, here's why this stuff is beneficial without saying, here's new stuff. What's the new stuff? The cameras? The new stuff is the system. The stuff I mean, I just want to just, you know, physical things or physical steps. And what we have here, Your Honor, is both. We have both those benefits you described to go to safety and reduce driver distraction, but we have a novel system and the system includes two specially positioned cameras or one or more specially positioned camera devices attached to a custom processor and all that configured to capture gesture controls, physical gestures from driver and passenger and translate those to control of a physical vehicle. Well, how about, what if the claim said this? A vehicle operating system in which the car is able to see gestures, hand gestures, by being made by the driver, something like this or like this. And then the car then interprets those gestures and then acts accordingly. Turn on the AC, turn off the heat, turn the radio station on to NPR. Would that be an abstract idea or would that be a claim with an inventive concept? Because now you've come up with this insight of making cars drive more safely with the driver because the driver can just use little hand gestures rather than trying to fiddle with buttons on a dashboard while driving. Is that an abstract idea or is that something with an inventive concept? That would be closer to the line of an abstract idea than what we have here. Whether or not that constitutes an abstract idea, I think it's closer, but that's not what we have here. Here we do have a claim that's specific in terms of how that's carried out in terms of these... So what's the stuff in the claim that's beyond what I just recited in my hypothetical? Well, you start with the camera devices, specially positioned camera devices that are positioned such that they can capture gestures from both passenger and driver. Where does it say specially positioned? Well, it's implicit in the fact that... Camera devices for capturing images of gestures of the driver? That's the limitation you're referring to, right? Well, that and when it talks about the processor, it talks about how the processor has to be able to receive signals where the gestures are captured simultaneously. So this is where you've got a processor in your claim that is able to interpret the hand gestures. That's correct. And then the processor is configured somehow, some way, to then execute actions based on those interpreted hand gestures. That's correct. And implicit in that configuration in terms of being able to receive simultaneous gestures from both the passenger and the driver is that the camera devices must be positioned in such a way that they can detect and receive those positions. If you're going to do some kind of processing of a video received signal, the camera has to point to where the hands are. To the hands and also to... Actually, these claims aren't even limited to hands, right? This is essentially a video version of voice recognition, right? It is a, in a sense, it's a non-touch approach to controlling... But voice recognition, right? And voice recognition is not... It's not touch either, right? Not assertedly new. Is video recognition of gestures or anything else by a computer with a processor that recognizes some of them and translates them into action, I'd assume that that's not new at that level. So why is this anything more than do that in a car? Well, again, this is something that has not... Well, it is in a car, it is in a vehicle, and it is addressing problems that are specific to vehicle technology. You know, driver distraction is not just a generic problem out there in the world. This is a problem specific to vehicle technology. And what's described in the specification on this record is that is novel. Embedding these camera devices in such a way to capture simultaneous gestures from driver and passenger and then translate those to vehicle control, that is novel. That's not something that's been seen before. It's not a capability a car has had before. So that is an improvement in vehicle technology, addressing a problem specific to vehicle technology. Nothing in here... I mean, tell me if this is wrong. Nothing here in either the claims or the spec says, you know, like MECRO, we have a wholly new way of recognizing and processing certain kinds of signals to do something with it. You're taking kind of processing and video and inputs that come from a video transmission, video just meaning that some camera or something is seeing something. You're taking all of that as background prior art because that's not claimed as an advance. You're just saying it would be a good idea to use this in a car. Well, you're saying that... Well, it goes beyond just saying it would be a good idea to use this in a car. What you're saying is that there's a problem. There's a technological problem in terms of driver distraction. How are we going to solve that problem? And, yes, it's using camera devices. Camera devices are not new. But embedding camera devices... Including processors behind them that do, in some interesting way, recognize meaning in the visual information coming in. That's likely correct. I would agree with that. There's some processor behind the camera device, right? That's likely not new. But what they're doing is taking that technology by putting it into the vehicle, positioning those cameras in such a way to capture the simultaneous gestures, and then going beyond just the capture of those gestures but translating those to the control of the vehicle itself is what provides the benefit here, provides the reduced driver distraction, the safety benefit. And that's what didn't exist in the prior. That's a capability a car had never been able to do before. And that's what's alleging the amount of complaint that you have that this is an inventive concept, not just with respect to the 373 but with respect to the other two patents as well. But even if you go beyond the Atrix issue, if you get to the Alice issue in Step 1 and Step 2, there's additional bases for reversing the district court below. And in particular, the district court reduced the claim in its formulation of the abstract idea really to a point of almost nonrecognition. The district court said that the claim ultimately in the 373 patent amounts to little more than a system for collecting information, analyzing and displaying certain results of the collection and analysis. But that characterization loses all connection to the gestures, to the embedded cameras, to the specially configured processor. All that's lost in that characterization. And so all of that improvement to the machine has been lost in the abstract idea. And this, again, is what the Supreme Court warned against, that if you reduce something so far, you lose the heart of what the claim is directed to. And the claims of the 373 are directed to this system that's in this card, this improvement technology, not just to the abstract idea of collecting information, analyzing and displaying in several of these courts' precedents. I see that I'm into my rebuttal time, so I will reserve it. We'll hear from the other side. Thank you, Mr. Hughes. Mr. Morrow. Good morning, Your Honors. May it please the Court. I'd like to start with the 329724 patents. Those are the related patents that essentially involve freeform display and put into a vehicle operating system. Freeform display is technology that allows you to move images around on digital displays. And the shared specification starts on this issue by acknowledging that that was something that preexisted and they were just moving it into the car. The spec says developments in liquid… What are you reading from? Specification column 1, lines 24 through 25. Is it 329? 329, yes, sir. Column 1 what? Column 1, lines 24 through 25. Thank you. It's a shared specification. Developments in liquid crystal display technology have made freeform display on a dashboard a reality. So that's what we're talking about. They're talking about a preexisting technology, freeform display, similar to a picture-in-picture function on your television set where you push a button and a new program pops up in the corner of your screen so you're watching two images at the same time. Push another button and it moves back. They're moving this preexisting technology into a car. The patents make clear that only generic components are used. There's no new screen technology, as I believe your honors have recognized. That's acknowledged at column 3, lines 1 through 5. The dashboard screen may include any display technology such as an LCD, crystal LCD, or LED. The specification also makes clear there's no new processing technology. You can find that at column 8, lines 16 through 21, which concludes that any other mechanisms for electronically processing information can be used. The patents also make clear that there are no bounds. There are no specific instructions regarding how you program these various components to move information around on a screen or switch back and forth. At column 6, lines 24 through 29, the configuration is wide open. You just receive user signals and perform any other operations. The signals can go in, excuse me, the screen displays can move in any direction. They can be separated or clustered on top of one another. They can be switched back and forth after any predetermined time period. And any signal can be used. That's all found in column 5. Can I ask, is it a matter of dispute whether it was old, just in a patent law sense, old, to have a single camera and a single display where the camera captures some gesture? There's a processor that, like OCR, optical character recognition, or gesture recognition, doesn't look up and says, this set of pixels or something on the input means the following. And now that correlates with an instruction. And it's shown on the display. Your Honor, I don't believe there's any dispute that that's not considered new technology. I do know that Thunder has not made any allegations in the original or amended complaint that the use of gesture control or camera devices placed in an automobile by themselves is new. So their argument is only about the split screen and the third screen. On these two, the 329 and 724 patents, I believe that's the freeform display where you're just moving information back and forth. You don't have to use hand gestures. You can push a button on the screen. You can rotate a dial. Any type of signal can be used. And so as far as I can tell, their argument is that they've improved vehicle technology because they've input this preexisting technology into a car, which enables a driver, for example, to switch the navigation screen to move in front of the passenger. So the passenger can then dictate how the navigation works without distracting the driver, and that improves safety. But I believe that misses the point, and I believe Your Honor was onto this with earlier questions. In fact, I believe the first question you asked, which is, are we talking about an improvement to the car? Are we talking about an actual improvement to the technology that's being put into the car? And here, arguably, putting this type of a system into a car can improve how a car performs and make it safer. But there's no legitimate argument that the technology used to make it safer has been improved. And I think that's where you get into these cases that talk about a field of use. Taking preexisting computer technology and putting it into a new field of use does not make an abstract idea non-abstract or make it unconventional. I think that's the real distinction that you see in these cases. There are just numbers of cases that this Court has, or opinions this Court has issued that make it clear that you can't take this preexisting technology, computer technology, and put it into a new field of use or environment and claim there's an improvement in that environment. It would be akin to dropping Wi-Fi technology into a car, which we know has happened. Of course, it makes cars more user-friendly, but the Wi-Fi technology itself would have to be improved in order to get a patent on that, and we just don't have that here. Continuing on, as I look at the decisions from this Court, they instruct us in performing the ALICE inquiry to look for analogous precedent that involves similar technologies. And I think here we have some really similar decisions. With respect to the 329 and the 724 patents, the interval licensing decision is very similar in that the patents involve the use of an attention manager to control the display of two sets of information on a display screen such that they would not overlap and they would not be distracting from one another like a ticker at the bottom of the screen. There was no new technology involved in doing that. The Court found that that essentially amounted to collecting, analyzing, and displaying two different information sets. There was no new claim technology. And I think that's what we have here. Without disclosing a specific improvement to the way computers or other technologies operate. And that's the language, I think, that gets back to what is being improved. The technologies that perform these functions are not being improved in these patents. Moving to ALICE Step 2, the Interval Licensing Court said, you're basically doing this with generic components and you're not teaching us how to do it, which is what we have here as well. There are no details in the specification or claims that teach somebody how to process, how to configure the processor to move information back and forth on the screen, or how to switch it back after a predetermined amount of time. So, on this theory, what would have filled the gap? The code? Algorithms? Or what? Accepting that the concepts appear to be new. I think on these patents, it's a very difficult, it's very difficult to get them to patentable subject matter. But I suppose they could have come up with a unique way to reconfigure and move information to various sections of a screen. And actually disclosed how you do that. How you configure the processor to move information around and move it back and forth. So, what's your theory of what should have been placed in the patent? I would say more detailed teachings on how you configure the system as a whole to perform these functions. As it stands, it just says, make a signal, the information moves to another panel, and then it moves back. Make another signal, and it moves to a third position. It doesn't tell us how you make it happen. It doesn't tell us... But once you have the concept, one could argue that a skilled programmer could figure that out routinely. Well, I think at that point, your skilled programmer probably could do that. And the patents talk about that. But then you're getting into kind of preempting a field. Because there are no confines within the patent as to what steps you have to follow to perform this process. It's just do it. And so, you're getting into a very broad subject matter that I think would cause preemption concerns in this particular field. That's not unique to this situation as to try and understand, unless you put in the five-foot shelf of ones and zeros, where the boundary is in all fairness to all sides. I think that's correct. I mean, I think we need new display... Looking for help from you? I'm not here to help them. But I just feel like that's... It's very difficult with respect to these two patents, the way that they're drafted and with what they claim. With respect to the 373 patent, that's the gesture control patent. And that's essentially... It's similar in that they're moving gesture control into a vehicle and claiming that that's patentable. The patents, again... The 373 patent, excuse me, doesn't teach any new way... There was some discussion of this when Mr. Reed was presenting. They don't teach any new way of capturing gestures or of transmitting or transferring gestures or transforming gestures into signals so that the operating system can perform signals. They don't teach any new ways of turning gestures into signals or resolving conflicts between gestures. So, for example, there are no teachings regarding the specific placement of cameras, where cameras need to be placed to accurately capture gestures and understand that it's a gesture coming from a driver as opposed to a passenger. The claims don't say anything about specific locations of the camera devices. Claim 1 says it's camera devices. It doesn't have any placement criteria. The specification makes it clear that any type of camera devices can be used located at any location. That's at column 4, lines 53 through 59. And they also make it clear that any type of gesture recognition techniques can be used pre-existing. Column 5, lines 41 through 44. Various gesture recognition techniques based on captured images. And at column 7, it goes on to say, this may include various types of pattern, anatomical and or motion recognition techniques. Is there something in this spec that says gesture, machine gesture recognition is familiar? Your Honor, I don't recall any specific provisions that say that explicitly, but the specification does say that various gesture recognition techniques can be used. Again, at column 5, lines 41 through 44, and 7, lines 15 through 16. And it doesn't teach anything in the spec about how to do that. It does not. There are no new... You said, I think, earlier that there's not been an assertion as to what the advance is here that included new techniques of gesture recognition. That's correct, Your Honor. Is that true? There are no allegations... Did you call this because I was close to saying something false? There are no allegations... I'd like to know where I almost misspoke. I don't believe you have. There are no allegations of any new gesture recognition techniques or camera devices used to capture gestures, for example, at night when it might be dark. But doesn't that reinforce their position that there is an inventive concept in the overall compilation of steps and not in the individual steps? And therefore, we don't need all of the details of the individual steps as I was inquiring. Well, I don't think it does based on this court's precedence because in interval licensing and in electric power, which I think is actually closer on this particular patent, the findings were that when you're performing steps that can be formed with generic computer components, you don't have an inventive concept unless you teach the how of how you achieve the new concept that's supposedly inventive. And here we don't have those details in the specification or the claims. And so I think it would be... It's contrary to the holdings in interval licensing and electric power to find that that would be... that could be inventive in this particular case. I'm looking for a particular quote that I found was relevant here. And this is from... the electric power case. The advanced... The asserted claims purport to make is a process of gathering and analyzing information of a specified content, then displaying the results and not on any particular assertively inventive technology for performing those functions. That's at 1353. And I think that's exactly what we have here. And I see that I am down to five seconds. If the court has no further questions, I will rest. Thank you. Thank you, Mr. Monroe. Mr. Lee. Thank you, Your Honors. With respect to what was just discussed with respect to the 329 and the 724 patents, what the specification teaches us is this is an improvement to vehicle technology. The problem in the prior art, the technology problem in the prior art is that you had two fixed static displays in conventional vehicle technology. You had a fixed static display with static features in front of the driver. And if anything else, you had a center console with a fixed static display. But that was the existing technology. This improved on that technology by taking out those fixed static displays and putting in a new single display, a single dashboard display that has multiple separate and independent information panels. And those independent information panels are configured and adapted to switch and duplicate depending on user signals. That changed how cars operate. Conventional cars don't do that. Conventional cars today don't do that. That changed how vehicles operate. That's a change in their capabilities. And under Finjin and other cases, that is eligible subject matter. Now, with respect to how to do it, these claims go beyond just saying take something generic or take a pre-existing practice and put it in a car. You know, the claims go beyond that. They give a specific mechanism for accomplishing this. They give a mechanism of two specially positioned cameras, a system involving the two specially positioned cameras. The custom processor is configured to translate gestures from driver and passenger, not just one, but simultaneous gestures from driver to passenger, and translate those to vehicle operation and control. And contrary to what my friend said earlier, there is detail as to actually how those gestures are captured. And that is found in dependent claims 6 and 7 of the 373 patent, which describes how the gesture, how the processor determines whether or not the passenger or the driver is the one that's making the particular gesture. And it does that by determining whether or not the gesture that it observes and the rest of the passenger are image continuous. In other words, whether you can go from the hands to the head or hands to the breast or head to some other body indicator, and that's what's claimed in 6 and 7, a different way of capturing those gestures. And there's no evidence in the record that that was well-known, routine, or conventional. So to say that all of this is conventional, this conventional gesture capture technology, that goes beyond the record we have before us. And finally, to your last point, Judge Nguyen, we're not claiming that we invented cameras. We're not claiming that we invented processors. But we are complaining the system, the entirety of the system that we're talking about here. And this Court's precedent is clear that when claiming a system, and in particular a system that involves a processor, you do not have to provide the programming details. I mean, that precedent goes all the way back to 1992 in the Enright-Hayes case. It says that if you claim a processor and say how that processor is configured and the functions it's configured to process, that is sufficient. Now, that was in the context of Session 112, but there's no principal reason why it should be different in the 101 context. And there's no precedent of which I'm aware that says you have a different standard when you're talking about eligibility versus invalidity under Session 112. And these claims provide that level of specificity. They provide at least a level of specificity as to the how, as we see in the Thales case, or we see in the visual memory case. Recall the Thales case had an element that was configured to calculate an orientation based on two sensors that were put on these two different features. Well, the system has to be enabled no matter what. Of course it does, Your Honor. And there's no allegation here that this does not enable one of ordinary skill in the arts to be able to perform the inventions in these paths. In fact, there's an expert declaration in the record that says exactly that. One of ordinary skill in the art would be able to take these claims and perform the inventions that are described. But we're talking about specificity and not providing enough how is simply not correct under Thales, under visual memory. Those are at the same level of specificity. And these claims, like in those cases, should be held eligible. Thank you, Your Honor. Thank you. Thank you both. The case is taken under submission.